UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

ANTHONY WASHINGTON,           )
                              )
                 Plaintiff,   )
     vs.                      )     1:04-cv-353-RLY-TAB
                              )
UNITED STATES OF AMERICA,     )
                              )
                 Defendant.   )

**Entry Discussing Pending Motions and Directing Entry of Judgment**

Anthony Washington (hereafter "Washington") seeks damages from the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* (hereafter "FTCA"). Washington claims that while an inmate at the United States Penitentiary at Terre Haute, Indiana (hereafter "USPTH") he was subjected to medical neglect of his left inguinal hernia and to the negligent infliction of emotional distress. The United States has filed a motion to dismiss for failure to state a claim upon which relief can be granted, or in the alternative for summary judgment.

Having examined and considered the pleadings, the United States' motion, Washington's response and the expanded record, the court finds that the United States' motion to dismiss should be denied and that its alternative motion for summary judgment must be granted. This conclusion, pertaining to the motion for summary judgment, rests on the following facts and circumstances:

1.  The United States cannot be sued without its consent, which is a prerequisite to the federal courts' exercise of jurisdiction. *See United States v. Mitchell,* 463 U.S. 206, 212 (1983). The FTCA represents a limited waiver of the United States' sovereign immunity by subjecting it to liability "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

2. There are two torts under Indiana law implicated by Washington's allegations–medical malpractice and the negligent infliction of emotional distress.

   a. The elements of medical malpractice in Indiana are these: 1) the physician owed a duty to the plaintiff; 2) the physician breached that duty; and 3) the breach proximately caused the plaintiff's injuries. *Mayhue v. Sparkman,* 653 N.E.2d 1384, 1386 (Ind. 1995).

   b. The claim of negligent infliction of emotional distress in Indiana has been recognized in the following terms:

   > When . . . a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, we hold that such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

   *Shuamber v. Henderson,* 579 N.E.2d 452, 456 (Ind. 1991); *see also Helsel v. Hoosier Insurance Company,* 827 N.E.2d 155, 157 (Ind.Ct.App. 2005). A tort of this nature can be asserted concurrent with a claim of medical malpractice, as in *Ryan v. Brown,* 827 N.E.2d 112 (Ind.Ct.App. 2005).

3. With respect to the claim of medical malpractice, two other features of Indiana law can be noted:

   a. The term "proximate cause" refers to "that cause which sets in motion the chain of circumstances leading up to the damage and has been defined as that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Honey Creek Corp. v. WNC Dev. Co.,* 331 N.E.2d 452, 456 (Ind.Ct.App. 1975) (citations omitted).

   b. "[E]xcept in those cases where deviation from the standard of care is a matter commonly known by lay persons, expert medical testimony is necessary to establish whether a physician has or has not complied with the standard of a reasonably prudent physician." *Culbertson v. Mernitz,* 602 N.E.2d 98, 104 (Ind. 1992).

4. As noted, the United States seeks resolution of Washington's claims through the entry of summary judgment. "Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the Federal Rules of Civil Procedure). A

"material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* "It is well-settled that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)).

5.  Viewed in the light most favorable to Washington as the non-movant, though limited to materials which comply with the requirements of Rule 56(e) of the *Federal Rules of Civil Procedure*, *see Koszola v. Board of Education v. City of Chicago,* 385 F.3d 1104 (7th Cir. 2004), the material facts are the following:

   a.  Washington arrived at the USPTH on June 26, 2002. His medical history indicated that Washington had a hernia. Washington received a medical examination by medical staff on July 1, 2002. On that occasion, staff noted a 2-3 centimeter reducible left inguinal hernia. Washington was found qualified for regular duty (job assignment) and for regular housing.

   b.  Washington was seen again by medical staff at the USPTH on July 17, 2002, on July 22, 2002, on September 12, 2002, and on October 10, 2002. Washington did not mention or seek any care for his hernia on any of these occasions.

   c.  On December 20, 2002, Washington was seen by medical staff, but advised staff that he had no complaints and did not need to be seen.

   d.  On June 11, 2003, Washington sent an Inmate Request, wherein he requested that the hernia be evaluated and that he be provided with a inguinal truss.

   e.  Washington was seen by medical staff on June 30, 2003. At that time, staff noted a 2-3 inch left inguinal hernia which was tender and hard to reduce. This condition was referred to the Surgeon/Utilization Review Committee for evaluation and was directed to return to the clinic as needed if the symptoms persisted or became worse.

   f.  On July 9, 2003, Washington was approved for a left hernia repair. This approval included the recommendation that the repair be completed in 30 days. Two days later, on July 11, 2003, Washington was prescribed a hernia truss.

   g.  Washington's hernia was surgically repaired on August 15, 2003. During the ensuing 60-day period, Washington was prescribed medication for pain, his dressing was changed as needed, he was educated on his condition and treatment plan, his sutures were removed, his surgical site was inspected and found to be well-healed, he was placed on a medical idle unit and/or given other restrictions, and saw the surgeon and/or other medical personnel on at least five occasions.

      h.     Washington's restrictions from the hernia surgery were lifted on October 14, 2003, and he remained at the USPTH until April 1, 2003.

      6.     In malpractice cases, health care providers must exercise that degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class acting under the same or similar circumstances. *Vergara v. Doan,* 593 N.E.2d 185, 187 (Ind. 1992). The physician principally responsible for the diagnosis and treatment of Washington's left inguinal hernia at the USPTH was Dr. Thomas Webster, a medical doctor. Dr. Webster has opined that Washington received appropriate and timely treatment for his medical complaints. The evidentiary record supports this.

      7.     Based on the foregoing, the pleadings and the evidentiary record support only the conclusion that there was no breach of a duty owed to Washington regarding his medical care prior to surgery. The United States is therefore entitled to judgment as to Washington's claim. Although the amended complaint does not encompass a claim regarding post-surgical care, the same conclusion would be reached, and for the same reason, even if such a claim was properly considered at this point. Wasington's claim of negligent infliction of mental distress is equally doomed, because there has been no identified negligence by Dr. Webster. These evidentiary shortcomings are fatal to Washington's claims. *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir. 1996) ("If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party."), *cert. denied,* 519 U.S. 1115 (1997).

      8.     Washington seeks an expert to benefit the presentation of his own case, not to benefit the trier of fact in understanding the evidence. The motion is **denied** to the extent that the plaintiff seeks the court's authorization for the expenditure of public funds to obtain and compensate an expert witness for the purpose of aiding the plaintiff in acquiring evidence to support his claims in this case. *See Ledford v. Sullivan,* 105 F.3d 354, 359 (7th Cir. 1997) (opining that because deliberate indifference is subjective standard, distinct from the objective inquiry involved in medical malpractice cases, expert witness testimony not warranted); *Tedder v. Odel,* 890 F.2d 210, 211-12 (9th Cir. 1989) (finding no statutory authority allowing district courts to waive, in *in forma pauperis* actions, the payment of witness fees required for Fed.R.Civ.P. 45(c) subpoenas). Litigants generally bear their own litigation expenses. *Tabron v. Grace,* 6 F.3d 147, 159 (3d Cir. 1993); *Boring v. Kozakiewicz,* 833 F.2d 468, 474 (3d Cir.1987) "There is no provision in the statute 28 U.S.C. § 1915(b) for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant." *Tabron,* 6 F.3d at 159. Even considered apart from these factors, Washington's motion for the appointment of an expert would be denied, because there is no plausible basis in his arguments or in the evidentiary record to suggest that such an effort would yield a different analysis of his claims.

9.      Washington has not identified a genuine issue of material fact as to his claim in this case, and the United States is entitled to judgment as a matter of law. "Summary judgment is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgment must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994), *aff'd*, 115 S. Ct. 2151 (1995). The United States' motion for summary judgment is therefore **granted**.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: January 9, 2006

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana